# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| FREMIYAH BISHOP, on behalf of herself and others similarly situated, | |
| Plaintiffs, | CIVIL ACTION FILE NO: FLSA Collective Action |
| v. | |
| KOD ATLANTA, LLC d/b/a KING OF DIAMONDS ATLANTA, a Foreign Limited Liability Company, and AKINYELE ADAMS, an individual, | |
| Defendants. | |

## COMPLAINT FOR DAMAGES AND JURY DEMAND

Plaintiff, FREMIYAH BISHOP, on behalf of herself and others similarly situated (collectively "Plaintiffs"), by and through the undersigned counsel hereby files this Complaint against KOD ATLANTA, LLC d/b/a KING OF DIAMONDS ATLANTA, a Foreign Limited Liability Company, and AKINYELE ADAMS, an individual (collectively "Defendants"), and alleges as follows:

## INTRODUCTION

1.      This is an action for damages and other relief brought by Plaintiffs pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., ("FLSA") as

amended by the Tip Income Protection Act of 2018 ("TIPA"), as a result of Defendants' failure to pay Plaintiffs the minimum wage and overtime wages as required by federal law. Plaintiffs seek unpaid wages, including "kick-backs," liquidated damages, and reasonable attorneys' fees and costs.

2.    The essence of Plaintiffs' claims are that Defendants: (a) misclassified Plaintiffs as independent contractors rather than employees; (b) failed to pay them at least the federal minimum wage for each hour they worked; (c) failed to pay them at least one and one-half times their regular rate of pay for each hour they worked over forty (40) hours in a given workweek, constituting a violation of the overtime wage provisions of the FLSA; and (d) seized their tips in violation of TIPA and the FLSA.

3.    These causes of action arise from Defendants' willful actions while Plaintiffs were employed by Defendants from 2022-2024. During their time being employed by Defendants, Plaintiffs were denied minimum wage payments and overtime wage payments as part of Defendants' scheme to classify Plaintiffs and other dancers/entertainers as "independent contracts." As the Department of Labor explained in a recent Administrative Interpretation:

> Misclassification of employees as independent contractors is found in an increasing number of workplaces in the United States, in part reflecting larger restructuring of business

organizations. When employers improperly classify employees as independent contractors, the employees may not receive important workplace protections such as the minimum wage, overtime compensation, unemployment insurance, and workers' compensation. Misclassification also results in lower tax revenues for government and an uneven playing field for employers who properly classify their workers. Although independent contracting relationships can be advantageous for workers and businesses, some employees may be intentionally misclassified as a means to cut costs and avoid compliance with labor laws.

As alleged in more detail below, that is exactly what Defendants are doing in this case.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction pursuant to the FLSA and 28 U.S.C. § 1331.

5.  Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred within the jurisdiction of this Court.

## PARTIES

6.  Plaintiff Fremiyah Bishop ("Bishop"), resides in this District and is a former employee of Defendants, having been employed from July 2022 to June 2024.

7.     Opt-in Plaintiff, Kariima Lynk ("Lynk"), resides in this District and is a former employee of Defendants, having been employed from June 2022 to October 2022.

8.      Plaintiffs Bishop and Lynk are/were employees of Defendants within the meaning of the FLSA.

9.     Plaintiffs are all current or former exotic dancers ("dancers" or "entertainers") who worked at Defendants' adult entertainment club, King of Diamonds Atlanta, located at 4730 Frontage Road, Forest Park, Georgia 30297 ("Club") at any time starting three (3) years before this Complaint was filed, up to the present.

10.     Defendant KOD Atlanta, LLC d/b/a King of Diamonds Atlanta ("KOD") is a Foreign Limited Liability Company organized under the laws of the State of Delaware and registered to do business in the State of Georgia. KOD's principal office address is located at 4730 Frontage Road, Forest Park, Georgia 30297. At all times material hereto (2022-2024), KOD is/was an "employer" or "joint employer" of Plaintiffs as defined by the FLSA, 29 U.S.C. § 203(d) and (g). KOD may be served by and through its registered agent, Georgia Registered Agent LLC, at 8735 Dunwoody Place, STE 6, Atlanta, Georgia 30350.

11.    Defendant Akinyele Adams ("Adams") is, on information and belief, an owner, operator, member, and manager of KOD. He is subject to the personal jurisdiction of this Court and may be personally served at 4730 Frontage Road, Forest Park, Georgia 30297, or wherever he may be found.

12.    At all times material hereto (2022-2024), Defendant Adams acted directly or indirectly on behalf of KOD with respect to Plaintiffs' compensation and other terms and conditions of their employment, and, at all times mentioned herein are/were an "employer" or "joint employer" of Plaintiffs as defined by the FLSA, 29 U.S.C. § 203(d) and (g).

13.    At all times material hereto, as owner, operator, member and manager of KOD, Defendant Adams has the authority to, and, in fact, did and continues to exercise day-to-day operational control over KOD.

14.    Defendant Adams made decisions such as: for whom and how many employees to hire; which employees to hire and fire; when the work day began and ended; the specific work shifts for each employee to work; the employees' management structure; whether an employee should be disciplined, fired or retained; the employees' pay rate or method of payment; payroll procedures at KOD and decisions affecting dancers and their pay; the consistent monitoring of employee performance; specific instructions to give to employees during their work shifts; and

the employment policies regarding the employees' independent contractor designations, including employees such as Plaintiffs.

15.    At all times material hereto, Defendant Adams was the only person affiliated with KOD vested with the authority to classify entertainers as employees and change their compensation structure to comply with the FLSA.

16.    At all times material hereto, Defendant Adams was responsible for determining whether KOD complied with the FLSA.

17.    At all times material hereto, Defendant Adams was Plaintiffs' "employer" within the meaning of the FLSA.

18.    Defendants may be served under Rule 4 of the Federal Rules of Civil Procedure.

## INTERSTATE COMMERCE

19.    Plaintiffs, as well as other entertainers and employees of KOD were engaged in commerce or the production of goods in commerce as defined by the FLSA.

20.    KOD was an enterprise engaged in commerce.

21.    KOD was an enterprise engaging in interstate commerce by having multiple employees regularly selling alcoholic beverages produced and shipped from outside of the State of Georgia, regularly serving foods produced and shipped

from outside of the State of Georgia and having multiple employees regularly processing out-of-state credit card sales in the furtherance of its business.

22.    KOD had out-of-state customers who regularly frequented the club.

23.    KOD had an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A) in calendar years 2021-2024.

24.    KOD had two or more "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in the FLSA, 29 U.S.C. § 203(s)(1)(A) during calendar years 2021-2024.

**COMMON FACTUAL ALLEGATIONS**

25.    Plaintiffs bring this action pursuant to the FLSA, 29 U.S.C. § 216(b).

26.    During the three years prior to the filing of this Complaint, Defendants owned and operated KOD, located in Forest Park, Georgia.

27.    KOD features adult entertainers, including nude female dancers, who perform throughout KOD's facility, which includes, in relevant part, stages, the floor area, and VIP areas.

28.     Defendants jointly owned, operated, and managed KOD and were all involved in the day-to-day operation of KOD.

29.     Defendants made the decision to classify Plaintiffs and other dancers as independent contractors rather than employees, and to not pay them the minimum wage or overtime wages.

30.     Defendants made the decision to require Plaintiffs and other dancers to pay certain fees and tip-outs each shift.

31.     Defendants directly and indirectly controlled dancers' work schedules by requiring them to work a minimum number of shifts and/or hours per shift, or pay a monetary penalty for failure to do so.

32.     Defendants and the Club's house moms and managers directly and indirectly controlled the appearance and dress of dancers at the Club.

33.     Defendants and the Club's house moms and managers had the authority to require dancers to change their appearance and attire at work.

34.     Defendants and the Club's house moms and managers required dancers to change their appearance and attire at work.

35.     Defendants and the Club's managers had the authority to suspend and discipline dancers.

36.    Defendants and the Club's managers directly and indirectly supervised dancers on a day-to-day basis.

37.    Defendants and the Club's managers required dancers to attend meetings to discuss workplace issues.

38.    Defendants and the Club's managers used mandatory dancer meetings to discuss problems with dancer dress, hair, makeup, weight, and appearance, the Club's promotional efforts and other work-related issues.

39.    Defendants made all advertising, marketing, and promotional decisions regarding the Club and paid all costs associated with advertising, marketing, and promoting the Club.

40.    Defendants required customers to pay a "door fee" to enter the business and, thus, had ultimate authority over which individuals were allowed to enter the Club as customers.

41.    Defendants and the Club's managers and house moms required dancers to pay them to perform at the Club, with said payment based on the particular dancer's arrival time. The amount of said mandatory payment increased every few hours during the workday.

42.     Each entertainer was required to sign in at the time of arrival, disclose the amount of her tips to Defendants, and sign out at the time of her departure for each shift she worked.

43.     Defendants required Plaintiffs to work a minimum number of days per week, including a minimum number of "slow days," or pay fines.

44.     Defendants and the Club's managers and house moms had the discretion to prohibit a dancer from performing at the Club if she arrived to a scheduled shift after a certain time.

45.     Defendants and the Club's disc jockeys ("DJs") gave dancers instructions to report to the stage and/or remove clothing while on stage.

46.     Defendants and the Club's DJs called dancers to dance on stage on a set rotation.

47.     Defendants prohibited dancers from opting-out of its stage rotation unless the dancer tipped the Club's DJs for the privilege of not performing on stage.

48.     Defendants and the Club's DJs determined the "adequacy" of the tips they received from the dancers, and if said tips were considered "inadequate," they routinely restricted a dancer's ability to perform on stage and/or harassed the dancers by making disparaging remarks over the Club's PA system, including in the presence of customers.

49.     Defendants and the Club's managers and house moms enforced a mandatory check-out process for the Club's dancers, which included the payment of various fees to the Club and its managers, house moms, DJs, hookah personnel, bartenders, money counters, sweepers, and other Club employees.

50.     Said fees increased for weekend shifts.

51.     During a shift, a dancer may not leave the premises without permission of Defendants and/or the Club's managers or house moms.

52.     After receiving permission to leave early, dancers were required to pay a monetary fine to the Club in addition to their regular mandatory tip outs.

53.     The discipline for a no call/no show included suspension or termination.

54.     Defendants and the Club's managers maintained and enforced written and unwritten rules of conduct for dancers.

55.     The duties of Defendants' management included ensuring that dancers complied with the Club's rules and policies.

56.     Defendants provided the customers, building, sound systems, stages, poles, VIP rooms, music, lighting, support staff, tables, alcohol, food, and other facilities and personnel necessary for an entertainer to dance for a living at the Club.

57.     Defendants were responsible for day-to-day purchases of liquor and food for sale at the Club.

58.    Defendants make substantial profits from their operations.

59.    Defendants required each entertainer to perform all work on its premises.

60.    Defendants did not require the Club's dancers to have prior experience as dancers or any formal or special training.

61.    A dancer's ability to increase her earnings is largely based upon her looks and working harder or longer hours.

62.    When an individual wanted to work as a dancer at KOD, the Club's house mom(s) and manager(s) generally performed a "body check" to determine if the individual's body was suitable for performing at the Club.

63.    A dancer is hired by Defendants largely because of her "appearance" and willingness to take off her clothes in front of others.

64.    At the time of hiring, Defendants hope and expect that each dancer will work for them for a significant duration.

65.    Defendants determined and dictated how much Plaintiffs were to charge customers for entertainment services, such as tableside dancing or VIP entertainment.

66.    Defendants advertised its business using pictures of scantily clad women.

67.    The presence of dancers, particularly nude dancers, was integral to Defendants' business success and operations.

68.    The Club's customers frequent the Club to watch nude dancing.

69.    The Club's customers are derived from Defendants' advertising and marketing efforts and the Club's reputation from operating its facilities for many years.

70.    Plaintiffs did not have their own business entities or employees associated with their dance work, and the job required no management of other employees.

71.    Plaintiffs were "employees" as that term is used in the FLSA, rather than independent contractors, as a matter of economic reality.

72.    Defendants were Plaintiffs' "employers" as defined in the FLSA, 29 U.S.C. § 203(d).

73.    Plaintiffs were not exempt from the minimum wage or overtime requirements of the FLSA.

74.    Defendants paid no wages or other compensation to Plaintiffs for any work time on the premises.

75.    Plaintiffs worked entirely for tips paid by the Club's customers.

76.    Defendants classified Plaintiffs as independent contractors.

77.     At all times material hereto, Plaintiffs had no opportunity for profit and loss associated with Defendants and the Club's managers.

78.     At all times material hereto, Plaintiffs were economically dependent upon the Defendants and the Club for their livelihood.

79.     Prior to the initiation of this civil action, several entertainers previously asserted claims alleging FLSA violations against Defendants.

## COLLECTIVE ACTION ALLEGATIONS

80.     As alleged herein, Defendants are liable under the FLSA for willfully failing to properly compensate Plaintiffs and all other similarly situated current and former adult entertainers employed by Defendants during the three year period prior to commencement of this action, and, as such, notice should be sent to past and present adult entertainers employed by Defendants KOD Atlanta, LLC d/b/a King of Diamonds Atlanta ("KOD"), a Foreign Limited Liability Company, and Akinyele Adams, an individual, during the three year period prior to initiation of this action, pursuant to the FLSA, 29 U.S.C. § 216(b).

81.     As alleged herein, Defendants deprived Plaintiffs and other similarly situated adult entertainers of compensation to which they are entitled through the following singular practices, decisions or plans:

a.  Requiring adult entertainers to work without compensation;

b. Requiring adult entertainers to perform work during times for which they could not receive tips without compensation;

c. Refusing to compensate adult entertainers one and one-half times minimum wage when their total hours worked exceeded 40 hours in a workweek;

d. Requiring adult entertainers to share tips with non-tipped employees; and

e. Requiring adult entertainers to pay fees for the right to work.

82.    Based thereon, Defendants have repeatedly and intentionally engaged in a similar practice, commonly and typically applied to the class of adult entertainers, of improperly depriving compensation to which such adult entertainers are entitled under the FLSA.

83.    Questions that are common among the FLSA Collective Action members include, but are not limited to:

a. whether Defendants have, and continue to, unlawfully refuse to pay adult entertainers proper compensation, in violation of the FLSA, 29 U.S.C. §§ 201, *et seq*., for all work performed;

b. whether Defendants have, and continue to, unlawfully refuse to pay adult entertainers proper overtime compensation, in violation of the FLSA, 29

U.S.C. §§ 201, *et seq.*, through the aforementioned policies and practices; and

c.  whether Defendants' failure to pay such proper compensation is willful within the meaning of the FLSA.

84.    There are numerous similarly situated current and former adult entertainers employed by Defendants in venue(s) owned and/or operated by Defendants KOD Atlanta, LLC d/b/a King of Diamonds Atlanta ("KOD"), a Foreign Limited Liability Company, and Akinyele Adams, an individual, who have been subject to the same policies and practices alleged herein, in violation of the FLSA, and who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. Those similarly situated employees are known to Defendants and are readily identifiable by Defendants' records.

85.    Each of the named Plaintiffs, identified in Paragraphs 6-7 herein, consented to sue in this action pursuant to the FLSA, 29 U.S.C. § 216(b). Additional potential collective action members may execute and file forms consenting to opt-in to join as a plaintiff in the instant action. Copies of the Plaintiffs' Notices of Consent are attached hereto as **Exhibit 1**.

86.     Plaintiffs, on behalf of themselves and other similarly situated current and former employees, bring this collective action against Defendants under the FLSA, 29 U.S.C. §§ 201, *et seq*. for failure to pay minimum wage and overtime compensation, and for seizing their tips in violation of TIPA and the FLSA.

87.     Plaintiffs and others similarly situated (the "FLSA Collective"), are individuals who are current and former adult entertainer employees of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

## CAUSES OF ACTION

### COUNT I: FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF THE FLSA, 29 U.S.C. §§ 206 AND 215
**(By Plaintiffs Individually and on Behalf of the Collective Against All Defendants)**

88.     Paragraphs 1 through 87 are incorporated herein by this reference.

89.     Plaintiffs were employees covered by the FLSA and entitled to the minimum wage protections set forth in the FLSA, 29 U.S.C. § 206(a).

90.     Defendants failed to compensate Plaintiffs at an hourly rate above or equal to the minimum wage.

91.     Defendants willfully failed to compensate Plaintiffs at an hourly rate above or equal to the minimum wage.

92.     Plaintiffs are entitled to payment of their minimum wages in an amount to be determined at trial, in accordance with the FLSA, 29 U.S.C. § 216(b).

93.    Defendants' requirement that Plaintiffs pay fees and fines to the Club and its managers, house moms, DJs, hookah personnel, bartenders, money counters, sweepers, and other Club employees violated the "free and clear" requirement of 29 CFR § 531.35.

94.    Plaintiffs are entitled to receive all unpaid minimum wages from Defendants for the hours that they worked.

95.    Plaintiffs are entitled to recover from Defendants as part of their wage loss, all fees, tip-outs and fines that they were required to pay in order to work at the Club, as well as the unpaid wages pertaining to the time spent complying with the Club's onerous dress and appearance requirements and waiting on the premises to comply with the Club's exit policies.

96.    Defendants' violation of the FLSA was willful. In other words, Defendants knew or showed reckless disregard for the fact that their wage and "pay to work" policies violated the FLSA.

97.    Defendants are unable to demonstrate good faith compliance with the FLSA because, in part, on information and belief, other former dancers have previously asserted FLSA claims against Defendants. Defendants knew or reasonably should have known of their obligations to pay Plaintiffs at least the federal minimum wage for each hour worked. In fact, on information and belief,

Defendants continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were illegal.

98.    As a result of Defendants' willful underpayment of minimum wages as alleged above, Plaintiffs are entitled to liquidated damages in accordance with the FLSA, 29 U.S.C. § 216(b).

99.    Defendants failed to act in good faith in implementing and enforcing their wage and "pay to work" policies and their implementation and enforcement of these policies were unreasonable.

100.    Defendants violated the record keeping requirements of the FLSA.

101.    As a result of its underpayment of minimum wages as alleged above, Defendants are jointly and severally liable to Plaintiffs for their litigation costs, including their reasonable attorney's fees, in accordance with the FLSA, 29 U.S.C. § 216(b).

**COUNT II: FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF THE FLSA, 29 U.S.C. § 207**
**(By Plaintiffs Individually and on Behalf of the Collective Against All Defendants)**

102.    Plaintiffs hereby incorporate paragraphs 1-87 above by reference as if fully set forth fully herein.

103.    Each Defendant is an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

104.    Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

105.    Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than $500,000.

106.    Plaintiffs consent to sue in this action pursuant to 29 U.S.C. § 216(b).

107.    Defendants failed to pay Plaintiffs the applicable overtime wage for each hour in excess of forty (40) during each workweek in which they worked in violation of the FLSA, 29 U.S.C. § 207.

108.    Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiffs the overtime wage required under the FLSA.

109.    Defendants are unable to demonstrate good faith compliance with the FLSA because, in part, on information and belief, other former dancers have previously asserted FLSA claims against Defendants. Defendants knew or reasonably should have known of their obligations to pay Plaintiffs overtime pay for overtime hours worked in a given workweek. In fact, on information and belief,

Defendants continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were illegal.

110.  Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, overtime wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to the FLSA, 29 U.S.C. § 216(b).

**COUNT III: ILLEGAL KICKBACKS, 29 C.F.R. § 531.35**
**(By Plaintiffs Individually and on Behalf of the Collective**
**Against All Defendants)**

111.  Plaintiffs hereby incorporate paragraphs 1-87 above by reference as if fully set forth fully herein.

112.  Defendants further violated the FLSA by requiring the Plaintiffs to pay house fees and tip outs as a condition of employment.

113.  Defendants further violated the FLSA by requiring the Plaintiffs to pay a percentage of all tips collected back to the Club and the end of every shift worked.

114.  Defendants' house fee and tip out requirement benefitted the Defendants and caused the Plaintiffs' potential wages to fall well below the minimum wage.

115.  Pursuant to the FLSA, specifically 29 CFR § 531.35, wages must be paid "free and clear."

116.   29 CFR § 531.35, states in part "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee."

117.   The house fees paid by the Plaintiffs constitute "illegal kickbacks" pursuant to 29 CFR § 531.35.

118.   The tip-outs paid by the Plaintiffs to the "house mom" the DJ and security constitute "illegal kickbacks" pursuant to 29 CFR § 531.35.

119.   These sums must be returned to the Plaintiffs to bring Defendants' minimum wage obligations to the Plaintiffs consistent with the requirements of the FLSA.

120.   Defendants' policy of house fees and tip outs were not recorded in the federal and state tax returns or gross receipts.

121.   Defendants did not record the number of fees for table and lap dances performed by the Plaintiffs during the duration of Plaintiffs' employment.

122.    Defendants are not entitled to a set off or tip credit for sums earned by the Plaintiffs.

**COUNT IV: UNLAWFUL TAKING OF TIPS IN
VIOLATION OF THE FLSA, 29 U.S.C. § 203
(By Plaintiffs Individually and on Behalf of the Collective
Against All Defendants)**

123.    Plaintiffs hereby incorporate paragraphs 1-87 above by reference as if fully set forth fully herein.

124.    Plaintiffs customarily and regularly received more than thirty U.S. Dollars ($30.00) a month in tips and, therefore, are each a tipped employee as defined in the FLSA, 29 U.S.C. § 203(t), *see also* 29 C.F.R. § 531.50.

125.    At all relevant times, each of the Defendants were "employer(s)" or "joint employer(s)" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

126.    Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

127.    Defendants operate an enterprise engaged in commerce within the meaning for the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

128.    Under the Tip Income Protection Act ("TIPA"):

[a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any

portion of employees' tips, regardless of whether or not it takes a tip credit. 29 U.S.C. § 203 (m)(2)(B).

129.   Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers in the form of fees, fines, mandatory charges and other payments to Club employees, such as managers, house moms, DJs, hookah personnel, bartenders, money counters, sweepers, and other Club employees, in violation of TIPA.

130.   Defendants required Plaintiffs to participate in an illegal tip pool, which included employees who do not customarily and regularly receive tips, and do not have more than a *de minimis*, if any, interaction with customer leaving the tips (such as the DJs and bouncers). *See* U.S. Dept. of Labor, Wage and Hour Division, "Fact Sheet # 15: Tipped employees under the Fair Labor Standards Act (FLSA)."

131.   The contribution Defendants required Plaintiffs to make after each shift was arbitrary and capricious and distribution was not agreed to by Plaintiffs or other dancers; but rather, was imposed upon Plaintiffs and other dancers.

132.   By requiring Plaintiffs to pool their tips with Club employees who do not customarily receive tips, including the individual Defendants named herein, Defendants "retained" a portion of the tips received by Plaintiffs in violation of the FLSA.

133.   Defendants did not make any effort, let alone a "good faith" effort, to comply with the FLSA as it relates to compensation owed to Plaintiffs.

134.   At the time of their illegal conduct, Defendants knew or showed reckless disregard that the tip-pool which they required Plaintiffs to contribute included non-tipped employees and, therefore, was statutorily illegal. In spite of this, Defendants willfully failed and refused to pay Plaintiffs the proper amount of the tips to which she was entitled.

135.   Defendants' willful failure and refusal to pay Plaintiffs the tips she earned violates the FLSA.

136.   As a result of the acts and omissions of the Defendants as alleged herein, and pursuant to 29 U.S.C. §§ 216(b) and 260, Plaintiffs are entitled to damages in the form of all misappropriated tips, plus interest, as liquated damages, an amount equal to all misappropriated tips, mandatory attorneys' fees, costs, and expenses.

### COUNT V: FORCED TIPPING, 29 C.F.R. § 531.35
**(By Plaintiffs Individually and on Behalf of the Collective
Against All Defendants)**

137.   Plaintiffs hereby incorporate paragraphs 1-87 above by reference as if fully set forth fully herein.

138.   Defendants required Plaintiffs to pay monetary fees to other Club employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

139.   Defendants' requirement that Plaintiffs pay fees to other Club employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

140.   Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiffs' wages.

141.   Plaintiffs are entitled to recover from Defendants all fees that Defendants required Plaintiffs to pay other employees in order to work at the Club, including but not limited to forced tip sharing.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court grant relief as follows:

a.    Enter a declaratory judgment or order finding that (i) Plaintiffs are "employees" under the FLSA; (ii) Defendants are "employers" as that term is defined under the FLSA; and (iii) Defendants violated the minimum wage, overtime wage, and record keeping provisions of the FLSA;

b.    Award Plaintiffs an amount to be determined at trial against Defendants for unpaid minimum wages, including unlawful deductions due under the FLSA;

c.    Award Plaintiffs an amount to be determined at trial against Defendants for unpaid overtime wages, including unlawful deductions due under the FLSA;

d.    Award Plaintiffs reimbursement of all tip-outs, house fees, and all other sums unlawfully paid to Defendants;

e.    Award Plaintiffs liquidated damages against Defendants in the same amount as their unpaid minimum wages;

f.    Award Plaintiffs liquidated damages against Defendants in the same amount as their unpaid overtime wages;

g.    Award Plaintiffs prejudgment interest on all amounts owed;

h.    Conditional certification of this case as a collective action under the FLSA;

i.    Award Plaintiffs their reasonable attorney's fees and costs of litigation under the FLSA; and

j.    Award any and such other relief this Court deems just, equitable and proper.

Respectfully submitted this 11<u>th</u> day of <u>February</u>, <u>2025</u>.

<u>/s/ Jordan P. Rose</u>
Jordan P. Rose, Esq.
GA Bar No. 851471
Carlos V. Leach, Esq.
GA Bar No. 488443
THE LEACH FIRM, P.A.
1560 N. Orange Ave., Suite 600
Winter Park, FL 32789
Telephone: (407) 574-4999
Facsimile: (833) 423-5864
Email: cleach@theleachfirm.com
Email: jrose@theleachfirm.com
Email: ppalmer@theleachfirm.com

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Demand is hereby made for trial by jury on all issues raised by these pleadings.

/s/ Jordan P. Rose, Esq.
Jordan P. Rose, Esq.

# EXHIBIT A

## IN RE: KOD ATLANTA, LLC d/b/a KING OF DIAMONDS ATLANTA, LITIGATION

### CONSENT TO JOIN COLLECTIVE ACTION

- I _____Fremiyah Bishop_____, consent to join the above styled lawsuit seeking damages for unpaid wages under the FLSA;

- I agree to be represented by The Leach Firm, P.A., counsel for the named Plaintiff;

- In the event this action gets conditionally certified and then decertified, I authorize Plaintiff's counsel to reuse this Consent Form to re-file my claims in a separate or related action against Defendant.

Date: _____02/10/2025_____

Signature: _____